NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AUCIELLO IRON WORKS, INC., Respondent.

No. 91–1905.

United States Court of Appeals, First Circuit.

Heard April 10, 1992.

Decided July 21, 1995.

---

John D. O'Reilly, III, with whom O'Reilly & Grasso was on brief, Southboro, MA, for respondent.

Collis Suzanne Stocking with whom Jerry M. Hunter, Gen. Counsel, D. Randall Frye, Acting Deputy Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, were on brief, Washington, DC, for petitioner.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and KEETON,* District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Several years ago, the National Labor Relations Board ("the Board") petitioned this court for enforcement of an order it had issued against Auciello Iron Works, Inc. ("the Company") pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) ("NLRA"). We affirmed, in large part, the Board's decision underlying the order. *NLRB v. Auciello Iron Works, Inc.,* 980 F.2d 804 (1st Cir.1992). However, while retaining jurisdiction, we declined to enforce the order and remanded to the Board for further consideration of an issue which we found the Board to have inadequately addressed. The Board has now, at long last, responded by issuing a comprehensive supplemental decision and order addressing the problems raised in our opinion. *Auciello Iron Works, Inc.,* 317 N.L.R.B. No. 60, 1995 WL 291061 (1995). Pursuant to our invitation, both parties have commented on the Board's opinion. We now grant the Board's petition for enforcement of its order.

The Board issued its original order upon concluding that the Company had committed an unfair labor practice in refusing to negotiate with the Shopmen's Local Union No. 501, a/w International Association of Bridge, Structural and Ornamental Iron Workers (AFL–CIO) ("the Union"), a union certified to be the exclusive collective bargaining representative for a number of the Company's employees. *Auciello Iron Works, Inc.,* 303 N.L.R.B. 562, 1991 WL 262403 (1991). During negotiations for a new collective bargaining agreement, the Union had accepted one of the Company's outstanding proposals.[1] The Company, however, subsequently refused to sign an agreement based on that

---

* Of the District of Massachusetts, sitting by designation.

1. In opposition to the petition for enforcement, the company challenged the continuing availability, and the subsequent acceptance, of its proposal. In our previous opinion, we affirmed the NLRB's finding that the proposal was still open and that the union had accepted it. *Auciello,* 980 F.2d at 808–09.

proposal and withdrew its recognition of the Union.

In concluding that the Company had thereby committed an unfair labor practice, the Board affirmed the administrative law judge's refusal to consider the Company's defense that, at the time the Union accepted the Company's contract proposal, the Company entertained a good-faith doubt of the Union's majority status. The Board thus refused to allow the Company to present evidence that the Union in fact lacked majority support at the time it accepted the Company's outstanding offer. In a footnote to its summary opinion, the Board wrote:

> We agree ... that under established Board precedent, once the Board finds that the parties have reached a binding collective-bargaining agreement, it is unnecessary to consider the issue of a respondent's alleged good-faith doubt of the union's majority status. *Belcon, Inc.*, 257 NLRB 1341, 1346 [1981 WL 20771] (1981); *North Bros. Ford*, 220 NLRB 1021, 1022 [1975 WL 6062] (1975).

*Auciello Iron Works, Inc.*, 303 N.L.R.B. 562, 562 n. 2, 1991 WL 262403 (1991).

Unsatisfied with the Board's brief treatment of this issue, we remanded for further consideration. Although we recognized that Board precedents clearly barred employers from raising a good-faith doubt about a union's majority status arising from events occurring *after* the parties reached an agreement, *see, e.g., North Bros. Ford, Inc.*, 220 N.L.R.B. 1021, 1022, 1975 WL 6062 (1975), we found it less clear that such a prohibition extended to bar good-faith doubts arising from events occurring *before* the parties reached an agreement. We thus objected to the Board's casual extension of the "contract bar rule" to pre-agreement doubts about majority status, without any reasoned policy analysis to support that extension. We were further troubled by the fact that neither party had addressed the Seventh Circuit's decision in *Chicago Tribune Co. v. NLRB*, 965 F.2d 244 (7th Cir.1992), which was handed down prior to oral argument in this case and which reached a result at odds with the Board's conclusion.

Unlike the Seventh Circuit, however, we did not undertake to pass ultimate judgment on the appropriateness of the Board's policy judgment. We noted instead that the Board "has the chief responsibility for developing coherent and correct labor negotiation rules" and that the question "calls for the Board's reasoned application of its expertise." *Auciello*, 980 F.2d at 812, 813. We therefore remanded to the Board, ordering it to "revisit, clarify, and explain the principles that it thinks apply in the present circumstances." *Id.* at 812.

The Board has responded with a thorough supplemental decision in which it affirms its earlier conclusion, namely, that an accepted offer bars an employer from later raising, as a defense to an unfair labor practice charge, a good faith doubt about the union's majority status arising out of events occurring prior to the acceptance of the offer. *Auciello Iron Works, Inc.*, 317 N.L.R.B. No. 60, 1995 WL 291061 (1995). Now, however, the Board has for the first time articulated the policy considerations underlying its rule, weighing both the advantages and disadvantages of varying rules in the specialized collective bargaining context. The Board found that the policies underlying the relevant provisions of the NLRA and earlier Board precedents supported extending the contract-bar rule to cover good faith doubts arising from events occurring prior to the acceptance. In particular, the Board found that the rule furthered the policy of preserving stable bargaining relationships and did not undermine the policy of preserving the workers' freedom to choose their own representatives. Pursuant to our remand, the Board also considered the Seventh Circuit's opinion in *Chicago Tribune*, concluding that it was inconsistent with the policies underlying the NLRA.

As earlier stated, the Board's policy judgments on this type of question are entitled to substantial deference from the courts. "Especially as the relevant principles here are informed less by statutes than by Board policies set out in its decisions, the area is one where the Board's presumed expertise is key." *Auciello*, 980 F.2d at 812. The public, the bar, the parties, and the courts are entitled, however, to have the Board's key rulings supported by "articulate, cogent, and reliable analysis." *Id.* at 813 (citations omitted). Having at last the benefit of the

Board's explanation, we are now satisfied, as we were not before, that the Board's decision is amply supported by rational application of its expertise. While the question is perhaps close, the Board's policy choice is reasonable and, as now articulated, quite persuasive. The Board's choice falls well outside the sphere of arbitrariness that might tempt us to substitute our own judgments for the Board's expertise on a question like this. *See Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42, 107 S.Ct. 2225, 2235, 96 L.Ed.2d 22 (1987) ("If the Board adopts a rule that is rational and consistent with the Act, then the rule is entitled to deference from the courts.")

 We accordingly accept the Board's ruling that, absent exceptional circumstances[2], an employer is barred in these circumstances from raising, after the union's acceptance of its outstanding offer, a defense of good faith doubt as to the union's majority status premised on events prior to that acceptance. In adopting the Board's rule, we reach a result different from that of our sister circuit in *Chicago Tribune, Co.*, 965 F.2d at 250. The Seventh Circuit was, however, without the benefit of the Board's present analysis. We hope the time and effort expended in this case will cause the Board to avoid the kind of perfunctory, inarticulate decision-making that caused the present difficulties.

The Company argues finally that, even if we uphold the Board's decision, we should condition enforcement of the Board's order upon a Board-supervised election to ensure that the Union still enjoys the support of the workers. The Company cites *NLRB v. LaVerdiere's Enter.*, 933 F.2d 1045, 1053 (1st Cir.1991), in which we refused to enforce the Board's bargaining order and instead ordered an election where: (1) there existed a showing of substantial employee dissatisfaction with the union prior to the employer's misconduct; (2) the employer's misconduct was less than egregious; and (3) there had been an inordinate delay in the Board's decision.

 Although there is no doubt that a great amount of time has elapsed since the underlying unfair labor practice, we are disinclined to order, on our own initiative and contrary to the Board's requested relief, a Board-supervised election at this point. This case is distinguishable from *LaVerdiere's*, insofar as *LaVerdiere's* involved a clear showing of employee dissatisfaction with the union. In that case, the employees had filed a decertification petition with the Board, and had exhibited other substantial evidence of dissatisfaction. *Id.* at 1048, 1054. In this case, by contrast, although there existed evidence that the *strike* was losing employee support, the evidence that the *Union* was losing employee support fell far short of that in *LaVerdiere's*. Accordingly, without meaning to pass judgment on the propriety of an election should one be sought and considered in another context, we enforce the Board's order in its entirety. *See id.* at 1053 (holding that the Board's choice of remedy is entitled to deference).

*The order of the Board will be enforced.*

---

**2.** The Company seeks to bring this case within the exception set forth in the Board's opinion for cases in which a company's good faith doubt arises simultaneously with the union's acceptance of the offer. *See Auciello,* 317 N.L.R.B. No. 60, at 11–12. We agree with the Board's implicit conclusion that this case does not fall within the exception, as the Company had all of the relevant information to support its claim prior to its acceptance of the offer.